PETRO–WELD, INC. and The Travelers Insurance Company, Petitioners,

v.

Peter LUKE, Director, Office of Workers' Compensation Programs, U. S. Department of Labor, Respondents.

No. 78–2579.

United States Court of Appeals, Fifth Circuit.

June 18, 1980.

Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Robert M. Contois, Jr., New Orleans, La., amicus curiae.

E. D. Vickery, Houston, Tex., for American Home Assurance Co., et al.

Carin A. Clauss, Sol. of Labor, Joshua T. Gillelan, II, Laurie M. Streeter, Associate Sol., U. S. Dept. of Labor, Washington, D. C., for respondents.

Before DYER, RUBIN and POLITZ, Circuit Judges.

DYER, Circuit Judge:

This proceeding is brought by Petro-Weld, Inc. and its workmens compensation insurer, The Travelers Insurance Company, under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. §§ 901–950, for review, pursuant to § 21(c) of the Act, as amended, 33 U.S.C.A. § 921(c), of the decision and final order of the Benefits Review Board in *Luke v. Petro-Weld, Inc.*, 8 BRBS 369 (1978).

The primary question for our determination is whether Petro-Weld's employee Luke may retain the full amount of his settlement made after judgment with the third party tort feasor Signal Oil, and also collect the full amount of compensation for permanent total disability from his employer's carrier Travelers, notwithstanding the provisions of 33 U.S.C.A. § 933(f), because Travelers agreed with Petro-Weld to waive its subrogation rights against Signal Oil. The Board upheld Luke's double recovery.

Subsidiary issues are the appropriate rates to be applied when the injury occurred after the enactment of the 1972 Amendments but before their effective date, and whether Luke's attorney is entitled to a fee for his services before the Board regardless of having received a fee for his third party tort action representation. The Board applied the post amendment rates, and determined that Luke's attorney was entitled to a fee. We reverse the Board's decision on the primary issue and affirm on the subsidiary issues.

The factual background giving rise to the interrelated legal issues are single and uncontroverted. Luke was accidentally injured on November 21, 1972 while employed by Petro-Weld on a fixed platform on the Outer Continental Shelf. He continued working, although suffering with pain, until December 28, 1972 when he became temporarily totally disabled. On September 18, 1974 his disability became total and permanent.

Luke sued the owner of the platform, Signal Oil, as permitted by Section 33(a) of the Act, as amended, 33 U.S.C.A. § 933(a), and obtained a verdict and judgment of $400,000.00. Pending appeal Luke settled for $350,000.00. After attorney's fees and costs were deducted Luke received $256,451.96.

Travelers, the workmens compensation carrier for Petro-Weld, paid Luke compensation and medical expenses totalling $19,225.18 between the time of injury and the judgment in his suit against Signal. Luke retained this money in addition to his recovery against Signal. Travelers had intervened in the third party suit to assert a lien for the payments made to Luke, but the court denied the intervention because of a provision in the policy expressly waiving subrogation against Signal.

After collecting from Signal, Luke sought reinstatement of his compensation benefits. The Administrative Law Judge found that Luke's disability was permanent and total as claimed but held that since his injury occurred prior to the effective date of the 1972 Amendments, i. e. on November 21, 1972, Travelers' liability was limited to the pre-Amendment rate, which, however, included adjustments payable under Section 10(h) as amended, 33 U.S.C.A. § 910(h) from the sources specified in Section 10(h)(2). The Administrative Law Judge also decided that Travelers was entitled to an offset against Luke's compensation entitlement pursuant to Section 33(f) of the Act so that both Travelers and the Section 10(h)(2) sources should resume paying their respective shares of compensation at such time as Luke's net recovery in the tort action had been exhausted at pre-Amendment rates. The Administrative Law Judge then denied

**420**

an award of fees and expenses to Luke's attorney. Luke and the Director, Office of Workmen's Compensation Programs, appealed to the Benefits Review Board. The Board reversed, holding that the waiver of subrogation in Travelers policy constituted a waiver of Travelers right under Section 33(f) to offset Luke's recovery from Signal against Travelers future liability for compensation. The Board also held that compensation payable for disability arising from an injury which occurred after the enactment of the 1972 Amendments but before their effective date is not limited to the ceiling imposed by the pre-Amendments provision. Finally the Board held that it was error to deny a fee to Luke's attorney. Petro-Weld and Travelers appealed the Board's decision and order to this Court.

In reaching its decision concerning the effect of Travelers waiver of subrogation the Board determined that *Allen v. Texaco Inc.*, 510 F.2d 977 (5th Cir. 1975) and *Capps v. Humble Oil & Refining Co.*, 536 F.2d 80 (5th Cir. 1976), "contain language which compels the decision we reach in this case" that is that the rationale of the Administrative Law Judge ". . . that Section 33(f) offset is not related to the right of subrogation, is erroneous."[1] In essence then the issue before us arises from the competing interpretations of *Allen*, by Luke and the Director on one hand and by Petro-Weld and Travelers on the other hand.

At the outset we observe that "[t]he standard by which we review administrative decisions under the Act is to reverse only if there is an error of law or when a finding of fact is unsupported by substantial evidence on the record considered as a whole." *Equitable Equip. Co. Inc. v. Hardy*, 558 F.2d 1192, 1196 (5th Cir. 1977); *Presley v. Tinsley Maintenance Service*, 529 F.2d 433 (5th Cir. 1976). The issue before us for review is a question of law. We are called upon to determine whether the Board erred in interpreting an express statutory provision, Section 33(f) of the Act, and our decision in *Allen*.

*Allen* involved an injury sustained by an employee of a contractor, American Casing Crews, aboard an oil drilling barge while performing work for the barge's owner Texaco. The contract between American and Texaco provided in pertinent part that American obtain from its compensation insurer a waiver of its subrogation rights against Texaco in case of injury to employees of American. American complied. However, when the injured employee sued Texaco, American's compensation insurer asserted a lien for the amount of compensation it had already paid. The case was settled for $15,000 plus any sum to which the insurer might be determined to be entitled by way of a lien. We affirmed the district court's holding that the insurer had waived its right to recoup compensation payment against the employees recovery against Texaco when it waived its subrogation rights and said,

Does the waiver of subrogation rights by the compensation carrier bar a lien against and participation in the proceeds of the settlement between the employee and the third party, to which the carrier would otherwise be legally entitled? . . We decide the workmen's compensation carrier waived any claim to the settlement between the third party and the employee.

510 F.2d at 978.

Drawing on this language and particularly emphasizing the words "participation in" and "any claim," the Director argues that a waiver of subrogation by an insurance carrier in favor of a designated beneficiary operates to exclude any consideration of a third party tort recovery in determining what benefits an employee receives under the Act. In this instance, according to the Director, the employee is entitled to full compensation and in addition the sum of $256,451.96. He argues that under *Allen* the right to Section 33(f) credit or offset is

[1] The Board's decision was by a two man panel. The concurrence by the Chairman was bottomed on *Allen* as being controlling although he noted that the decision "clearly runs contra to the clear intent of Section 33(f) of the Act, which was designed to prevent double recovery. . . . "

a right to "participation in the proceeds" of the third party action and a "claim to" the benefit of those proceeds; that the assertion of a lien and the allowance of an offset are two methods for the enforcement of the same right, to reduce or eliminate compensation liability where a third party is liable for damages.

On the other side of the coin Travelers points out the dissimilarity of this case and *Allen*. The narrow issue in *Allen* was an attempt by the insurance carrier to obtain reimbursement for compensation previously paid to the employee. Here no reimbursement is sought. Again in *Allen* the waiver was written for the specific benefit of Texaco and it was Texaco who invoked the waiver of subrogation provision in the policy. Here Luke, not Signal, seeks to benefit from the insurance contract to which he was neither a party nor the designated third party beneficiary. In *Allen* there was to be double recovery. Here Signal has settled and paid and has no further interest in this dispute which will result in a double recovery if Luke receives both compensation and his tort recovery.

We disagree with the Director's broad interpretation of *Allen*. The narrow issue there did not encompass the question of further entitlement to benefits under 33 U.S.C.A. § 933(f) because that question was not before the Court. Nor do we agree with the Director's extrapolation from *Allen* that the right to Section 33(f) offset is a right to "participation in the proceeds" of the third party action and a "claim to" the settlement proceeds which was barred by the waiver of subrogation. It is neither. Travelers is not seeking any right of subrogation against Signal; it is not seeking to defeat or diminish the legal rights of Luke by conferring a benefit on Signal; it is not seeking to participate in or make any claim to the settlement funds or to diminish them in any respect; it is not seeking to change Luke's entitlement to compensation benefits and his full right to recover damages from his tort feasor Signal; it is not seeking to avoid liability for compensation which it admittedly owns; it simply submits that the compensation payable by it to Luke be made in accordance with the Section 33(f) formula.[2]

By its plain terms Section 33(f) fixes the liability of the employer-carrier for compensation in the future after a third party settlement or judgment has been obtained. It simply cannot be read to mean that the employer-carrier is liable to presently pay compensation in addition to the amount received from the third party without first exhausting that fund, and thus provide a double recovery—in this case of over $256,000. Nothing in *Allen* supports such a position. *See also Bloomer v. Liberty Mutual Insurance Co.,* —— U.S. ——, 100 S.Ct. 925, 63 L.Ed.2d 215, (1980). In our view Section 933(f) has nothing to do with the right of subrogation of the employer-carrier. That section provides a statutory right to have the employer-carrier's liability for future compensation determined under its provisions. For these reasons the decision of the Benefits Review Board, that the waiver of subrogation precluded the application of a Section 33(f) offset against Luke's third party recovery of benefits payable by Travelers, is erroneous.

Next we are called upon to determine the proper rate of compensation to be paid. Luke was injured on November 21, 1972, twenty five days after the enactment of the 1972 Amendments (October 27, 1972) and five days before their effective date (November 26, 1972). His disability became permanent and total on September 18, 1974. Petro-Weld and Travelers contend that Luke's benefits should be governed by the rates applicable prior to the Amendments while Luke and the Director argue that compensation should be paid at the amended benefit rates.

2. 33 U.S.C.A. § 933(f) provides, "If the person entitled to compensation institutes proceedings within the period prescribed in subdivision (b) of this section the employer shall be required to pay as compensation under this chapter a sum equal to the excess of the amount which the Secretary determines is payable on account of such injury or death over the amount recovered against such third person."

Before the Board Luke took the position that the rate should be determined by the date of disability rather than the date of injury. The Board, in line with its prior decisions, properly rejected Luke's interpretation of when the post Amendment rates should apply. The Board, however, accepted the Director's "enactment date" argument, overturned its prior decision that held compensation for injuries sustained prior to the effective date of the Amendments was limited to the pre-Amendment rate, and held that Luke's injury, which occurred after the date of the enactment of the 1972 Amendments, and before the effective date, was to be compensated at the amended rate.

Prior to the 1972 Amendments compensation for disability was limited to a maximum of $70.00 per week. The Amendments raised the limitation, initially to $167 and, after a three year period to 200 per cent of the national average weekly wage. Longshoremen's Act § 6(b)(1), as amended, 33 U.S.C.A. § 906(b)(1). Section 11 of the Amendments added subsection (f), (g) and (h) to Section 10 of the Act, 22 U.S.C.A. § 910. Subsection (f) provides for annual increases in benefits payable for disability "arising out of injuries sustained after the date of the enactment," and subsection (h) provides for increases in benefits payable for disability arising out of injuries occurring prior to the date of enactment. Paragraph (2) of subsection (h) directs the payment of the additional compensation due under subsection (h) one half from a special fund established under Section 944 and one half from appropriations.[3] Section 22 of the Amendments provides that the Amendments are to become effective thirty days after enactment.[4]

3. Longshoremen's and Harbor Workers' Compensation Act § 10(f), (h), as amended by Pub. L.No.92–576, § 11, 86 Stat. 1258, 33 U.S.C.A. § 910(f), (h) (1976) provides:

(f) Effective October 1 of each year, the compensation or death benefits payable for permanent total disability or death arising out of injuries sustained after the date of enactment of this subsection shall be increased by a percentage equal to the percentage (if any) by which the applicable national weekly wage for the period beginning on such October 1, as determined under section 6(b), exceeds the applicable national average weekly wage, as so determined, for the period beginning with the preceding October 1.

. . . . . .

(h)(1) Not later than ninety days after the date of enactment of this subsection, the compensation to which an employee or his survivor is entitled due to total permanent disability or death which commenced or occurred prior to enactment of this subsection shall be adjusted. The amount of such adjustment shall be determined in accordance with the regulations of the Secretary by designating as the employee's average weekly wage the applicable national average weekly wage determined under section 6(b) and (A) computing the compensation to which such employee or survivor would be entitled if the disabling injury or death had occurred on the day following such enactment date and (B) subtracting therefrom the compensation to which such employee or survivor was entitled on such enactment date; except that no such employee or survivor shall receive total compensation amounting to less than that to which he was entitled on such enactment date. Notwithstanding the foregoing sentence, where such an employee or his survivor was awarded compensation as the result of death or permanent total disability at less than the maximum rate that was provided in this Act at the time of the injury which resulted in the death or disability, then his average weekly wage shall be determined by increasing his average weekly wage at the time of such injury by the percentage which the applicable national average weekly wage has increased between the year in which the injury occurred and the first day of the first month following the enactment of this section. Where such injury occurred prior to 1947, the Secretary shall determine, on the basis of such economic data as he deems relevant, the amount by which the employee's average weekly wage shall be increased for the pre-1947 period.

(2) Fifty per centum of any additional compensation or death benefit paid as a result of the adjustment required by paragraphs (1) and (3) of this subsection shall be paid out of the special fund established under section 44 of this Act, and 50 per centum shall be paid from appropriations.

(3) For the purposes of subsections (f) and (g) an injury which resulted in permanent total disability or death which occurred prior to the date of enactment of this subsection shall be considered to have occurred on the day following such enactment date.

4. Longshoremen's and Harbor Workers' Compensation Act Amendments of 1972, Pub.L.No.

The Director argues that the post Amendment rate is to be used because the new benefit rates which became *effective* thirty days after the enactment of the Amendments (November 26, 1972) *apply* to all injuries sustained after the *enactment* date (October 27, 1972). The Director points out that the literal wording of Section 10(h)(1) of the text, 33 U.S.C.A. § 910(h)(1) cannot apply to this case because it pertains to "total permanent disability or death which commenced or occurred prior to *enactment* of this subsection," (emphasis supplied), and here the injury occurred after the enactment date.

Travelers contends that Section 10(h) is applicable here because the term "date of enactment" in Section 910(f), (g) and (h) must be construed in the light of Section 944. Section 910(h)(2) provides that one half of the payments for the adjustments required by Section 910(h)(1) are to be derived from the special fund. It is argued that if the "date of enactment" in subsection (h)(1) is given its literal meaning as urged by the Director, it conflicts with Section 944 which provides inter alia:

(j) The proceeds of this fund shall be available for payments:

(1) Pursuant to section 10 and 11 with respect to initial and subsequent annual adjustments in compensation for total permanent disability or death which occurred prior to the *effective* date of this subsection. . . .

(emphasis added). Section 44(j) is literally inconsistent with Section 10(h). This being so Travelers insists that the choice should be controlled by the prior uniform administrative adherence to the effective date as the significant one.

The Director counters by pointing out that the careless drafting of Section 44(j) resulted in its erroneous reference to "sections[s] 10 *and 11*.". Section 11 of the *Amendments* contained the new adjustment provisions of Section 10 of the *Act*. It is suggested that careless drafting permeates Section 44(j). Moreover the House Committee report describes Section 44(j)(1) as providing for payments from the fund

for initial and subsequent annual adjustments in compensation for permanent total disabling injuries or deaths occurring prior to the date of *enactment* of the [A]mendment[s] . . . .

H.R.Rep.No.92–1441, 92 Cong., 2d Sess. 18 (1972), [1972] U.S.Code Cong. & Admin. News, pp. 4698, 4715. Travelers' argument concerning the scope of Section 44(j) places it in the dilemma that if we adopted it Travelers would not benefit. It would not bring the case within the Section 10(h) provisions because Section 44(j)(1) specifies that it is the date permanent total disability commences that controls, not the date of the injury. Luke's permanent total disability commenced long after the effective date of the Amendments.

When the distinction between the application of Sections 10(f) and 10(h)(3) and the mechanism of 10(h)(1) are considered, together with the plain meaning of the words involved, and the fact that the Amendments did not contain an express limitation to injury or death occurring after the effective date, we are forced to the conclusion that the new benefit structure was intended to apply to all injuries and deaths occurring after the enactment date, although the new rates were not to take effect until November 26, 1976. Section 10(f) is therefore inapplicable to this case.

■ Finally we turn to the decision of the Administrative Law Judge, reversed by the Board, that Luke's attorney is not entitled to an award of attorney's fees because the recovery of further compensation by Luke is contingent, and because he was compensated by Luke in the third party suit. We agree with the Board that there is no merit in this reasoning. An award of fees should be made under the Longshoremen's Act § 28, as amended, 33 U.S.C.A. § 928.

The attorneys were under no compulsion to represent Luke in the Longshoremen's Act proceedings after the successful result

92–576, § 22, 86 Stat. 1265 provides: "The amendments made by this Act shall become

effective thirty days after the date of enactment of this Act."

obtained for him in the tort suit. They are entitled to an additional fee for the successful prosecution of Luke's claim under the Act. They must, of course, submit itemized statements showing the time they have spent at each stage of the proceedings and the activity in which they spent it. *See Ayers S. S. Co. v. Bryant*, 544 F.2d 812 (5th Cir. 1977). And insofar as it appears that their work in the tort case reduced the time they would otherwise have had to spend on the case for the purposes of the Longshoremen's Act claim this must be reflected in the fee allowed under the Act.

Since the Board held that no Section 33(f) offset was allowable to Travelers it did not have to, nor did it decide the correctness of the computation of the amount of the offset made by the Administrative Law Judge. The correct amount of such credit is for the Board to determine on remand.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.