631 F.2d 1190
 Robert L. PIGRENET, Sr., Petitioner,
v.
BOLAND MARINE & MANUFACTURING COMPANY and The Director of
the Office of Workers' Compensation Programs of
the Department of Labor, Respondents.
 No. 79-1782.
 United States Court of Appeals,
Fifth Circuit.
 Dec. 3, 1980.
 
 Pitard, Pitard & Porobil, Michael L. Lash, New Orleans, La., for petitioner.
 Stewart E. Niles, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for Boland Marine, etc.
 Carin A. Clauss, Mary A. Sheehan, Solr. of Labor, U. S. Dept. of Labor, for Director, O.W.C.P.
 Petition for Review of an Order of the Benefits Review Board.
 Before TJOFLAT, POLITZ and HATCHETT, Circuit Judges.
 HATCHETT, Circuit Judge:
 
 
 1
 Petitioner seeks review of an administrative determination that he did not sustain a compensable injury under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901. The administrative finding is not supported by substantial record evidence. We reverse and remand.
 
 
 2
 On June 30, 1972, the petitioner sustained an injury to his back while working for his employer, Boland Marine & Manufacturing Company (Boland Marine). The injury occurred when the petitioner fell on a catwalk while attempting to dislodge a large nut on a boom outside of the catwalk rail. Three days after the accident, the petitioner saw his family physician for treatment. It is this injury for which the petitioner sought disability benefits under the Act. After a formal hearing, an administrative law judge held that the petitioner was permanently and totally disabled as a result of an injury to his back. On Appeal, the Benefits Review Board concluded that the petitioner was permanently and totally disabled, but remanded the case to the office of administrative law judges for a determination as to any causal relationship. Due to the death of the first hearing examiner, a different administrative law judge was assigned to hear the case on remand. This administrative law judge (second judge) only reviewed the written record and briefs submitted by the parties.
 
 
 3
 The written record establishes that on July 16, 1972, the petitioner was admitted to a hospital for treatment of a back injury. The hospital records indicate that an injury was sustained just four days prior to admission, when petitioner carried a desk to an upstairs office while working for another employer. The second administrative law judge accepted the employer's contention that it was this incident which caused the petitioner's disability rather than the June 30, 1971 accident. The petitioner's injury, therefore, did not arise out of the course of his employment with Boland Marine. This conclusion precludes the petitioner's recovery under the Act. The conclusion is based on numerous inconsistencies which the second administrative law judge found to reflect adversely on the petitioner's credibility.
 
 
 4
 The petitioner was treated by various doctors on occasions subsequent to June 30, 1972 at hospitals and out-patient treatment centers. The documented medical history obtained from those centers indicates that the petitioner complained of back injury resulting from several occurrences including involvement in an automobile accident on February 24, 1973. On May 7, 1973, petitioner underwent surgery after a physician determined that he had a "degenerative disk." This condition was attributed to aging. Additional x-rays demonstrated that the petitioner had "spina bifida acculta S-1" which is a congenital abnormality.
 
 
 5
 According to the second administrative law judge:
 
 
 6
 "The credible evidence in this case supports the conclusion that Claimant did not suffer a compensable injury while working for this Employer on June 30, 1972. Instead, it proves that he suffered an injury while lifting a desk on or about July 13, 1972, which aggravated a pre-existing degenerative disk and, which, in turn, was further aggravated by injuries sustained lifting tires, twisting his back on his boat, and an automobile accident."
 
 
 7
 On a second appeal to the Benefits Review Board, the second administrative law judge's finding was upheld.
 
 
 8
 We are guided by well-settled principles in the discharge of our appellate responsibility. In cases arising under the Longshoremen's and Harbor Workers' Compensation Act, our duty is to determine whether the administrative findings of fact are supported by substantial evidence in the record, considered as a whole, or if there is an error of law. Petro-Weld, Inc. v. Luke, 619 F.2d 418 (5th Cir. 1980); Equitable Equipment Co., Inc. v. Hardy, 558 F.2d 1192 (5th Cir. 1977); Presley v. Tinsley Maintenance Service, 529 F.2d 433 (5th Cir. 1976).
 
 
 9
 The issue of credibility is inextricably intertwined with whether substantial evidence supports the ultimate administrative finding that there was no causal connection between the petitioner's disability and the injury sustained while in Boland Marine's employ. The administrative law judge, on remand, arrived at this determination after merely reviewing the written record of the proceedings before the first administrative law judge. The petitioner, however, failed to state an objection to the credibility evaluation upon only the printed word and failed to request a hearing for oral testimony. This does not preclude our consideration of the point on this appeal. Questions not presented to or passed on by the fact finder may be considered on appeal under exceptional circumstances where a miscarriage of justice would otherwise result. See D. H. Overmyer Co. v. Loflin, 440 F.2d 1213 (5th Cir.), cert. denied, 404 U.S. 851, 92 S.Ct. 87, 30 L.Ed.2d 90 (1971).
 
 
 10
 Normally, a proper credibility evaluation requires that the fact finder hear and observe the witness. Credibility is not readily discernable by one who merely reads a cold record. Lacking specific Fifth Circuit precedent concerning whether a substituted fact finder may properly rely on a written record alone to make a credibility determination, we seek the wisdom of other circuits. The Second, Fourth, and Eighth Circuits have implied that where credibility of the witness is crucial to resolving a factual dispute, a substituted fact finder must engage in a de novo hearing of the evidence. Appalachian Power Company v. Federal Power Commission, 328 F.2d 237 (4th Cir.), cert. denied, 379 U.S. 829, 85 S.Ct. 59, 13 L.Ed.2d 38 (1964); Art National Manufacturers Distributing Co. v. Federal Trade Commission, 298 F.2d 476 (2nd Cir.), cert. denied 370 U.S. 939, 82 S.Ct. 1588, 8 L.Ed.2d 808 (1962); Gamble-Skogmo, Inc. v. Federal Trade Commission, 211 F.2d 106 (8th Cir. 1954). Thus, we find in this instance that the failure by the substituted administrative law judge to conduct a de novo hearing of the evidence constitutes manifest injustice.
 
 
 11
 In reviewing whether there is substantial evidence in the record, as a whole, to support the administrative determination on the causal connection issue, we remain mindful of the generous spirit of congressional concern in the policy of the Act. The Act must be construed "broadly and liberally so as to effectuate fully the legislature's remedial purpose." Longmire v. Sea Drilling Corp., 610 F.2d 1342, 1351 (5th Cir. 1980). "In deciding each appeal, we must remember that the Act is to be liberally construed in favor of injured workers." Jacksonville Shipyards, Inc. v. Perdue, 539 F.2d 533, 541 (5th Cir.), cert. denied, 433 U.S. 908, 97 S.Ct. 2967, 53 L.Ed.2d 1088 (1979). "(A)ll doubtful questions of fact are to be resolved in favor of the injured employee." Strachan Shipping Co. v. Shea, 406 F.2d 521, 522 (5th Cir.), cert. denied, 395 U.S. 921, 89 S.Ct. 1773, 23 L.Ed.2d 238 (1969).
 
 
 12
 We hold that the proximate cause determination in this case is unsupported by substantial evidence. It rests upon an evaluation of credibility and the drawing of inferences from the written record alone. Therefore, we reverse the judgment of the Benefits Review Board upholding the administrative law judge's conclusion, and remand for a formal evidentiary hearing to determine whether the petitioner's disability arose out of the injury sustained while working for Boland Marine.
 
 
 13
 REVERSED AND REMANDED.
 
 
 14
 TJOFLAT, Circuit Judge, dissenting.
 
 
 15
 Since I think it essential to an understanding of the issues before us, I begin this dissent by sketching out what actually occurred at the administrative level:
 
 
 16
 Mr. Pigrenet initially litigated this case before an administrative law judge, who concluded that Pigrenet was entitled to benefits. The Benefits Review Board, however, remanded the case to the law judge for further factual findings. In the interim, the first administrative law judge had died, and after remand a second judge was appointed. The substituted judge, after reviewing the record-which consisted largely of conflicting testimony-determined that he could resolve the remaining factual issues on the basis of the then-existing record. He informed the parties of this determination, giving them the opportunity to request an evidentiary hearing at which they could try the case anew or offer additional testimony to supplement the previous record. Neither Pigrenet nor the employer, however, requested such a hearing, obviously for strategic reasons. Accordingly, the administrative law judge decided the case on the record prepared by the first law judge and proposed a decision, adverse to Pigrenet, which the Benefits Review Board subsequently adopted.
 
 
 17
 Although Pigrenet failed to request a new evidentiary hearing, he now raises as error the administrative law judge's failure to hold one. Pigrenet argues that an evidentiary hearing was required because it was impossible for the administrative law judge to resolve credibility issues on a cold record; the logical extension of his argument is that it was also impossible for the judge to weigh the evidence and make the findings of fact necessary to decide the case. The majority, in a holding I consider as dangerous as it is novel, agrees with Pigrenet.
 
 
 18
 Pigrenet, it is true, had a right to reproduce oral testimony before the substituted administrative law judge. My brothers Politz and Hatchett, however, ignore that Pigrenet chose not to do so, and thus, in effect, selected the very procedure he now claims was fundamentally defective. In truth, both Pigrenet and the employer, received all of the process they were due. Given this, the only explanation for the majority's holding is that the process of administrative fact-finding is unable to tolerate the resolution of credibility issues on the basis of a written record. It is the system itself, then, rather than the right of the litigant to procedural fairness, that somehow requires vindication; this case merely serves as the vehicle to achieve that end.
 
 
 19
 As I have indicated, I think the majority's position that a fact-finder can never decide credibility issues by examining a cold record carries with it dangerous implications. Moreover, and contrary to the majority's perception, the law is settled in this circuit (and every other circuit that has considered the question) that a party waives his right to reproduce oral testimony before a substituted fact-finder if he fails to request a new hearing, and that he cannot reclaim that right on appeal. W. R. B. Corp. v. Geer, 313 F.2d 750, 752-3 (5th Cir. 1963), cert. denied, 379 U.S. 841, 85 S.Ct. 78, 13 L.Ed.2d 47 (1964).[1] See also Anaya v. Romero, 627 F.2d 226 (10th Cir. 1980); N. L. R. B. v. Dixie Shirt Co., Inc., 176 F.2d 969, 971 (4th Cir. 1949). This is, of course, consistent with the general rule that "procedural objections to the action of an administrative agency or trial court must be timely made to give the tribunal an opportunity to correct the error, if error there be." Brotherhood of R. R. Trainmen v. Central of Georgia Ry. Co., 415 F.2d 403, 417 (5th Cir. 1969) (citing Brotherhood of R. R. Trainmen v. Chicago, M., St. P. & P. R. Co., 380 F.2d 605, 608 (D.C.Cir.1967).
 
 
 20
 In W.R.B. Corp., v. Geer, supra, a master had been appointed to ascertain damages in a complex trial. Before the master could finish his report, however, he became ill and was replaced. The second master based his report on the record prepared by the first master. The trial court adopted this report. On appeal, it was argued that the court should have rejected the second master's report because he did not rehear the transcribed testimony. We held that this objection could not be raised for the first time on appeal, since the "trial judge would have made appropriate provision for the appearance or re-appearance of any critical witnesses for oral examination or reexamination before the successor Master had ... the parties ... informed (the court) that this was advisable or necessary." 313 F.2d at 752. The holding in Geer was recently adopted by the Tenth Circuit in Anaya v. Romero, 627 F.2d 226 (10th Cir. 1980).
 
 
 21
 The majority either ignores Geer and this circuit's prior panel rule, or perceives some unarticulated basis by which Geer can be distinguished from the case before us. Putting aside the legal issue of whether a litigant may waive his right to a new evidentiary hearing before a substituted fact-finder, I think it important to consider the implications of the majority's holding that "where credibility of the witness is crucial to resolving a factual dispute, a substituted fact-finder must engage in a de novo review of the evidence." Supra at 1192 (emphasis added). This necessarily requires every fact-finder personally to hear all disputed testimony. The practical impact of such a requirement on the administrative and judicial tribunals over which we exercise the power of review is inescapable. Longshoreman's and Harbor Worker's Compensation Act cases are tried to administrative law judges in much the same manner as non-jury cases are tried to district judges and state courts. The rules of practice and procedure allow, universally I think, the reception of highly disputed testimony in such forms as depositions, prior trial transcripts and tape recordings. Critical credibility questions are often resolved on a cold record. If such a process of litigation is, suddenly, so intolerable in the trial of cases before administrative law judges that we must intervene when the parties, themselves, did not object and received the very process they requested and were due, then it follows inexorably that in order to vindicate the litigation process in the countless other forums whose decisions we are called upon to review, we must intervene whenever appellants in any type of forum discover too late that they made the wrong tactical decision at trial.
 
 
 22
 The conclusion my brothers have reached is simply at odds with the way factual disputes are resolved in our adversarial system. It is the litigant's right, and indeed responsibility, to decide what evidence to present to the fact-finder and to choose the form that evidence should take. The litigant is bound only by procedural and evidentiary strictures and the limits of his judgment. In the case before us, Pigrenet decided to rely on a written record as evidence, but the fact-finder was not persuaded by it. Unhappy with the result, Pigrenet now, on appeal, requests a fresh opportunity to put on additional evidence, an opportunity the majority accords him since the fact-finder could not, in the majority's view, make a reasoned or fair or accurate determination about credibility.
 
 
 23
 Aside from the unfairness to the employer, who must now relitigate a case it had every reason to believe was completed, the majority's holding, at least in my view, will create considerable doubt in the minds of the lawyers and judges in this circuit about the continued use in any forum, administrative or judicial, of transcribed testimony as evidence. For example, in light of the majority's holding, can litigants stipulate to the use of depositions of witnesses whose testimony is in conflict, as Pigrenet and the employer did before both administrative law judges in this case, when the trier of fact must determine the deponents' credibility? What if the witnesses' testimony can be presented only by deposition, as the rules of procedure provide for in certain circumstances? If an exception is carved out of the majority's rule to permit the use of depositions in limited situations, will it make a difference if it is later discovered that the deponent was actually available to testify? And if depositions of unavailable witnesses may be used, I must wonder how a witness' nonavailability somehow endows the finder of fact with sufficient perspicacity to make a credibility choice he could not otherwise make.
 
 
 24
 Or consider a mistrial or an appellate reversal in a jury case. Quite commonly, the litigants will stipulate, on retrial, to the use of transcripts of significant portions of the first trial rather than incur the expense and effort involved in restaging every minute of live testimony. This practice, of course, requires the fact-finder to make credibility determinations on the basis of testimony it reads rather than observes. Under the majority's holding, this would be impermissible.
 
 
 25
 The majority's decision would also, but for a recent Supreme Court decision, call into question district court affirmances of a magistrate or special master's findings of fact whenever the magistrate or master was confronted with an issue of credibility. The Supreme Court case, a habeas petition, held that the district court was correct in denying the petitioner's request to readduce oral testimony (presented to the magistrate) for the benefit of the ultimate fact-finder, the district judge. United States v. Raddatz, --- U.S. ----, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980). I think Raddatz reflects the view that a finder of fact can competently, and in consistence with due processrequirements, make a determination about the credibility of witnesses based on written transcripts alone.
 
 
 26
 In light of the foregoing, and because I find that the Benefit Review Board's decision was supported by substantial evidence in the record, I would affirm the Board's decision.
 
 
 
 [1]
 The majority cites several cases to support its holding that "where credibility of the witness is crucial to resolving a factual dispute, a substituted fact finder must engage in a de novo review of the evidence." Supra at 1192. Not one of these cases, however, even remotely suggests that a party may raise as error a fact-finder's decision not to hold such a hearing when the party fails to object to the procedure at the fact-finding level. In fact, in Gamble-Skogmo, Inc. v. FTC, 211 F.2d 106, 115 (8th Cir. 1954), cited by the majority, supra at 1191-92, which held that a substituted hearing examiner erred in refusing a party's request to conduct a de novo hearing, the Eighth Circuit distinguished seemingly contrary cases by noting that in those cases, the parties failed to request a de novo hearing