HATLEY 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-92-298-CV





RECEIVER FOR CITIZEN'S NATIONAL ASSURANCE COMPANY, 


AN IMPAIRED COMPANY,



 APPELLANT


vs.





JOHNNY RAY HATLEY,



 APPELLEE



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT



NO. 459,999, HONORABLE ROBERT C. WRIGHT, JUDGE PRESIDING



 





 The Receiver for Citizen's National Assurance Company (1) appeals the district
court's judgment awarding Johnny Ray Hatley workers' compensation benefits that Hatley claimed
arose from an on-the-job truck accident. We will affirm.



BACKGROUND


 On October 31, 1985, Johnny Ray Hatley was injured in a truck collision while in
the course and scope of his employment as a hauler with Moore Transportation Company. Near
the Texas-New Mexico border, a truck collided with the truck that Hatley was driving.

 Prior to the present lawsuit, Hatley commenced a third-party action against the
tortfeasor, which he settled for a net recovery of $85,000 from the negligent third party. Pursuant
to the settlement, the Receiver (2) received $16,000 and signed a document entitled, "RELEASE IN
FULL OF ALL CLAIMS AND RIGHTS."

 On March 21, 1989, Hatley filed the present action and tried the underlying
workers' compensation case before a jury which returned a verdict that Hatley was totally and
permanently incapacitated as a result of his on-the-job injury. In its motion for take nothing
judgment, the Receiver argued that the $85,000 third-party settlement should be treated as an
advance against any workers' compensation recovery under the workers' compensation statute. 
The trial court rendered judgment on the verdict in favor of Hatley and against the Receiver for
approximately $78,000 of workers' compensation benefits plus interest.

 In a single point of error, the Receiver argues that the trial court erred in failing
to treat the third-party settlement as an advance against workers' compensation benefits under
former article 8307, section 6a (3) of the workers' compensation law. Maintaining that the release
has no legal effect, the Receiver contends that (1) the treatment of the settlement is governed
entirely by statute; (2) the subject of the statutory offset is not included within the release; and (3)
even if the release were determined to address the offset issue, the release is not supported by
consideration.



DISCUSSION AND HOLDING


Application of the Workers' Compensation Law

 The heart of this appeal concerns whether the third-party settlement should be
treated as an advance according to former section 6a of the workers' compensation law or whether
the release signed by the Receiver precluded such treatment. Section 6a governs the disbursement
of recovery, if any, by a workers' compensation beneficiary from a third-party recovery and states
in pertinent part:



[T]he net amount recovered by such beneficiary from the third party action shall
be applied to reimburse the association for past benefits and medical expenses paid
and any amount in excess of past benefits and medical expenses shall be treated as
an advance against future benefit payments of compensation to which the
beneficiary is entitled to receive under the Act.



 The Receiver contends that the operation of the offset is controlled entirely by
statute, and therefore, the release has no effect. To hold otherwise, the Receiver maintains, would
result in overcompensation to Hatley at the expense of the Receiver. To support this contention,
the Receiver relies on two cases: Goodman v. Travelers Insurance Co., 703 S.W.2d 327 (Tex.
App.--Corpus Christi 1985, no writ), and Petro-Weld, Inc. v. Luke, 619 F.2d 418 (5th Cir. 1980). 
These cases are both distinguishable.

 In Goodman, the injured worker brought a third-party action, in which the carrier
intervened. The parties agreed that the carrier was to receive "$50,000 from the first $150,000
to be paid by the settling defendant, and the balance of its subrogation interest ($66,459.28) from
any recovery beyond the settlement amount." 703 S.W.2d at 328. The agreement was silent on
the issue of future medical payments. After the settlement, the worker incurred additional medical
expenses that the carrier refused to reimburse. The court held that the worker was not entitled
to recover this additional benefit from the carrier.

 The agreement in Goodman merely delineated the allocation of the third-party
settlement between the worker and the carrier. It is clear from the language of the opinion that
the carrier did not waive its subrogation interest; the agreement merely limited the reimbursement
of the remainder of the carrier's subrogation interest to any recovery in excess of the settlement
amount. Here, the release, by its language, discharges Hatley from "any and all rights, claims,
demands and damages of any kind." Further, the agreement in Goodman was silent as to any
future medical payments. The release involved in the case at bar specifically extends to future
claims and expressly waives "all rights under any law or statute." (Emphasis added). We do not
read Goodman to stand for the proposition that the statute alone controls the operation of the
offset. Because the agreement in Goodman did not address the possibility of an offset, we
conclude that Goodman is distinguishable from the present case.

 Petro-Weld involved the federal Longshore and Harbor Workers' Compensation
Act, 33 U.S.C. §§ 901-950 (1988), and not the Texas workers' compensation law. Therefore, we
conclude that Petro-Weld is distinguishable and not controlling. 



Effect of the Release

 The Receiver next contends that the release is one of a general nature and thus does
not include the subject of the offset, while Hatley maintains that the release specifically waives
all past and future rights of the Receiver.

 A release is a contract and is subject to the rules of construction that govern
contracts. See Williams v. Glash, 789 S.W.2d 261, 264 (Tex. 1990). When the terms of written
agreements are unambiguous, the intent of the parties must be determined from the plain language
of the agreements. Allison v. National Union Fire Ins. Co., 734 S.W.2d 645, 646 (Tex. 1987). 
Furthermore, "[i]n order to effectively release a claim in Texas, the releasing instrument must
'mention' the claim to be released. Even if the claims exist when the release is executed, any
claims not clearly within the subject matter of the release are not discharged." Victoria Bank &
Trust Co. v. Brady, 811 S.W.2d 931, 938 (Tex. 1991).

 As a preliminary matter we note that the release is entitled, "RELEASE IN FULL
OF ALL CLAIMS AND RIGHTS." The first paragraph of the release constitutes a general
release of "all rights, claims, demands and damages of any kind, known or unknown" arising from
injuries sustained in the truck collision. However, in the second paragraph, the Receiver
specifically waives any rights that the Receivership might pursue under the statute: "I and the
Receivership hereby expressly waive and relinquish any and all rights under any law or statute
to the contrary." This language clearly encompasses any statutory rights the Receivership may
have had under former section 6a of the workers' compensation law. Language in paragraph six
of the release extends this express waiver to future subrogation and reimbursement rights: "The
Receiver and the Receivership hereby agree that any liens, subrogation or reimbursement rights
which might arise out of this accident and settlement will be assumed by the Receiver and the
Receivership." (Emphasis added).

 We conclude that the release is not a general release as argued by the Receiver, but
instead constitutes a specific waiver by the Receiver of its rights under former section 6a of the
workers' compensation law. A plain reading of the release demonstrates that the Receiver
expressly waived any past and future claims under the statute, and, furthermore, released all
subrogation and reimbursement rights.



Consideration for the Release

 The Receiver finally argues that, in the event the release is determined to address
the subject of an offset, the release is not supported by consideration. This argument fails for
several reasons. First, the Receiver did receive $16,000 for release of its claims and rights. The
release document clearly states that all claims and rights were released "FOR AND IN
CONSIDERATION OF THE SUM OF Sixteen Thousand Dollars ($16,000)." The Receiver
maintains that, because the $16,000 was paid by the third-party tortfeasor and not by Hatley,
Hatley did not provide the necessary consideration for the release. However, "sufficient
consideration for a contract may consist of either a benefit to the promisor or a loss or detriment
to the promisee." Buddy "L", Inc. v. General Trailer Co., 672 S.W.2d 541, 547 (Tex.
App.--Dallas 1984, writ ref'd n.r.e.) (citations omitted). Surrendering a legal right represents
valid consideration. See id.; see also Taylor v. Bonilla, 801 S.W.2d 553, 556-57 (Tex.
App.--Austin 1990, writ denied) (surrender of contract rights constitutes valid consideration). 
Hatley's settlement of the third-party action constitutes legally sufficient consideration because
Hatley surrendered his legal right to a jury trial and received $16,000 less than the total amount
of the settlement. Second, the Receiver acknowledged that he deemed the consideration to be
sufficient:



I nevertheless consider that the money now being paid is fair and equitable under
all circumstances. I and the Receivership accept it as a full and final settlement of
all claims, rights and damages which the Receiver and the Receivership now have
or may have against the parties being released, their insurers, agents or
representatives.



Based on these facts, we conclude that the release was supported by consideration. We, therefore,
overrule the Receiver's point of error.



CONCLUSION


 For the reasons stated above, we affirm the judgment of the trial court.



 

 Mack Kidd, Justice

[Before Justices Powers, Kidd and B. A. Smith]

Affirmed

Filed: April 7, 1993 

[Publish]

1.   Citizen's National Assurance Company was the workers' compensation carrier for
Hatley's employer, Moore Transportation Company. Citizen's National Assurance
Company went into receivership before trial and the Receiver assumed the company's
workers' compensation obligations.
2.   The Receiver, having assumed the workers' compensation obligations for Citizen's
National Assurance Company, was entitled to recoup its expenditures for benefits from
the third-party settlement.
3.   Act of May 17, 1985, 69th Leg., R.S., ch. 326, sec. 1, § 6a, 1985 Tex. Gen. Laws
1387, 1387, repealed by Act of Dec. 12, 1989, 71st Leg., 2d C.S., ch. 1, § 16.01(10), 1989
Tex. Gen. Laws 1, 114.