Jimmy ALLEN, Plaintiff,

v.

TEXACO, INC., Defendant-Appellee,

North-West Insurance Company,
Intervenor-Appellant.

No. 74–1902.

United States Court. of Appeals,
Fifth Circuit.

April 7, 1975.

Abraham Gerber, Gen. Counsel, New Orleans, La., for intervenor-appellant.

Robert M. Contois, Jr., Robert B. Acomb, Jr., New Orleans, La., for Texaco, Inc.

Richard C. Baldwin, New Orleans, La., for American Casing Crews.

Before BELL, AINSWORTH and RO-NEY, Circuit Judges.

RONEY, Circuit Judge:

█ This is a case of first impression. An employee was injured on the job and received compensation benefits under the Longshoremen's and Harbor Workers' Compensation Act. The compensation carrier had waived rights of subrogation as to any claim the employee might have against a third party who caused the injury. The employee sued the third party and a settlement was reached. Does the waiver of subrogation rights by the compensation carrier bar a lien against and participation in the proceeds of the settlement between the employee and the third party, to which the carrier would otherwise be legally entitled? The district court held there to be a bar and dismissed the carrier's claim. The compensation carrier argues that the waiver only bars it from filing a suit against the third party as subrogee of the employee's claim, but does not bar its lien against the suit proceeds or settlement proceeds where the employee pursues the claim against the third party and receives a settlement or judgment. We decide the workmen's compensation carrier waived any claim to the 'settlement between the third party and the employee. We affirm the district court.

In 1972, Texaco, Inc. and American Casing Crews, Inc. entered into a miscellaneous work agreement whereby American, as an independent contractor, was to furnish labor and equipment to Texaco at the latter's request. American was also required by the specific terms of the agreement to procure from its insurer, North-West Insurance Company, a waiver of subrogation rights against Texaco, or to have Texaco named in its insurance policy as an additional co-assured. American chose the former alternative and, in consideration of an additional premium, obtained from North-West the required waiver of subrogation rights against Texaco.

Jimmy Allen, the original plaintiff in this matter, was employed by American and sustained an accidental injury on August 16, 1972, while working aboard Texaco's movable drilling barge. North-West, as the compensation insurer of American, paid Allen $2,660 in compensation benefits and $230 for medical bills on American's behalf in fulfillment of the employer's responsibility under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq. The payments by North-West were made voluntarily, without a formal award of compensation benefits being entered by the Department of Labor.

Allen then brought this action against Texaco for damages. North-West sought and obtained permission from the district court to intervene as plaintiff "in order to assert a claim of subrogation." It asserted a lien on any recovery Allen might obtain for the amount of compensation payments it had advanced and for the medical expenses it had incurred. Texaco, in turn, impleaded American as a third-party defendant seeking indemnity under the provisions of the contract between Texaco and American.

Before trial, Texaco reached a settlement agreement with Allen and with American. Pursuant to that agreement, Texaco paid Allen $15,000, and further agreed to pay him any additional amount which might be owed on the subrogation claim asserted by North-West. American agreed to reimburse Texaco for a portion of the amount which was to be paid to Allen. Thus, the only issue before the district court was whether or not North-West's waiver of subrogation rights against Texaco affected its compensation lien claim. The district court, after reviewing the depositions, stipulations, documents and memoranda submitted, rendered an opinion in which it held that North-West was barred by the specific waiver of subrogation in favor of Texaco in the insurance policy.

In the main policy issued by North-West, under the heading "Conditions", it is stated:

12. Subrogation: In the event of any payment under this policy, the company shall be subrogated to all rights of recovery therefor of the insured and any person entitled to the benefits of this policy against any person or organization, and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after loss to prejudice such rights.

This provision was modified by Endorsement No. 13 of the policy which provides:

In consideration of an additional premium as shown above [$103.00], based on 10% of the premium developed in operations performed by the assured for TEXACO, INC. and subject to a minimum premium of $100.00, it is agreed that the Company hereby waives its rights of subrogation of claims coming under this policy against: TEXACO, INC.

Throughout the course of this litigation, North-West has asserted that the language in Endorsement No. 13, along with the testimony of the underwriter, demonstrates that no waiver of North-West's right to join a lawsuit to protect its compensation lien was requested, nor was such a waiver given. What was given, North-West argues, was a waiver of its right to sue Texaco under 33 U.S. C.A. §§ 933(b) and (h). These sections provide, in effect, that if a compensation carrier makes payments under a formal order and if the claimant does not institute an action against a third party tortfeasor within six months, then the carrier shall have the right to sue the third party. The parties agree on the validity of the waiver but do not agree on whether the rights waived include the right to proceed against a claimant's recovery fund in a suit against Texaco as a third party tortfeasor.

Section 33(h) of the Longshoremen's and Harbor Workers' Act, 33 U.S.C.A. § 933(h), provides that the compensation insurance carrier shall be subrogated to all the rights of the employer under § 933 if it has assumed the payments of compensation to the injured employee:

(h) Where the employer is insured and the insurance carrier has assumed the payment of the compensation, the insurance carrier shall be subrogated to all the rights of the employer under this section.

Among the rights of the employer to which the carrier is subrogated is the right provided in section 33(b) of the Act, 33 U.S.C.A. § 933(b), for an assignment of an employee's claim against a third party to his employer in those instances where payments are received pursuant to a compensation award:

(b) Acceptance of such compensation under an award in a compensation order filed by the deputy commissioner or Board shall operate as an assignment to the employer of all right of the person entitled to compensation to recover damages against such third person unless such person shall commence an action against such third person within six months after such award.

See 33 U.S.C.A. §§ 919, 921. Section 33(e) of the Act, 33 U.S.C.A. § 933(e), governs the distribution of the recovery when an employer or a subrogated insurer institutes a § 933(b) action, and specifically provides for reimbursement for all compensation and medical payments advanced.

There is no statutory counterpart of § 933(e) where payments are made to an employee without a formal award of compensation being entered. The subrogation right where there is no award is a judicial creature with the statute as a rationale. In cases such as this one, where the employee himself sues the third party tortfeasor, the courts have long recognized a right of subrogation to the extent of payments made, and have permitted the employer or its insurer to intervene in the employee's suit to protect its right, even where compensation was paid without the entry of a formal

compensation award. The Etna, 138 F.2d 37 (3d Cir. 1943); Hugev v. Dampskisaktieselskabet International, 170 F.Supp. 601 (S.D.Cal.1959), aff'd sub nom. Metropolitan Stevedore Co. v. Dampskisaktieselskabet International, 274 F.2d 875 (9th Cir.), cert. denied, 363 U.S. 803, 80 S.Ct. 1237, 4 L.Ed.2d 1147 (1960); Fontana v. Pennsylvania R.R., 106 F.Supp. 461 (S.D.N.Y.1952), aff'd sub nom. Fontana v. Grace Line, Inc., 205 F.2d 151 (2d Cir.), cert. denied, 346 U.S. 886, 74 S.Ct. 137, 98 L.Ed. 390 (1953). Thus, in The Etna, the leading case involving compensation without an award, the court stated:

> We find no intent indicated by the Act to take away from the employer who pays compensation without an award his right to reimbursement out of his employee's recovery from third persons. On the contrary, we think that the intent and scheme of the Act requires that the employer's *right to subrogation* for compensation payments made in the circumstances here shown be recognized wholly apart from and without regard for the assignment provided for in Sec. 33(b) of the Act. It is only the right of control of the employee's right of action against third persons which an employer foregoes by paying compensation without an award. *His right to reimbursement out of the recovery for the employee's injury remains unaffected.*

138 F.2d at 41 (emphasis added). North-West claims that in its contract with American only the right "of control of the employee's right of action against third persons [Texaco]" under § 933(b) of the Act was waived, and that the right to a lien against the recovery fund remains intact.

Although North-West cites no case in which a lien has been allowed absent a right of subrogation, it contends that *The Etna* and its progeny, Fontana v. Pennsylvania R.R., *supra; see* Nacirema Operating Co. v. Oosting, 456 F.2d 956 (4th Cir.), cert. denied, 409 U.S. 980, 93 S.Ct. 313, 34 L.Ed.2d 243 (1972); Joyner v. F & B Enterprises, Inc., 145 U.S.App. D.C. 262, 448 F.2d 1185 (1971); International Terminal Operating Co. v. Waterman Steamship Co., 272 F.2d 15 (2d Cir. 1959), cert. denied, 362 U.S. 919, 80 S.Ct. 671, 4 L.Ed.2d 739 (1960), support the proposition that a waiver of subrogation does not waive a compensation lien against the recovery fund. We believe that the above-quoted language from *The Etna* refutes this argument. The court in establishing a compensation lien against the recovery fund does so only in terms of the employer's right to subrogation for compensation payments made to the employee. The only right North-West has to third party liability is this subrogation right to which it succeeded as the employer's insurer. There is no indication that any independent right, *i. e.,* other than a right of subrogation, was created in favor of the employer or its insurer. The decision in *The Etna* merely recognizes that the employer's right is one of subrogation to be asserted through the procedure of intervention in the employee's suit for the purpose of obtaining a lien on the recovery fund.

By Endorsement No. 13, North-West waived its rights of subrogation arising under the Longshoremen's and Harbor Workers' Act and under the main policy. The cases relied upon by North-West do not involve situations where the insurer specifically waived subrogation. For instance, in International Terminal Operating Co. v. Waterman Steamship Co., 272 F.2d 15 (2d Cir. 1959), cert. denied, 362 U.S. 919, 80 S.Ct. 671, 4 L.Ed.2d 739 (1960), an injured stevedore, after receiving compensation payments from his employer without award, brought suit against the owner of the vessel which he was unloading when he was injured. While this action was pending, his employer notified the shipowner that it had made compensation payments to the employee and that it would look to the shipowner for reimbursement of the amount of such payments should the em-

ployee obtain judgment or reach settlement. Pursuant to a plan of settlement devised by the trial judge in the employee-third party action, a judgment was entered against the third party and, at the explicit directions of the trial judge, a check for the full amount of the judgment was immediately paid over to the employee. The employer then filed an action for reimbursement against the third party. Since the third party was ordered by a state court of competent jurisdiction to turn over the entire amount of judgment to the employee, the court held that the employer could look only to its employee for satisfaction of its claim for reimbursement. In that case the employer had an unquestioned right to subrogation and the court settled the question as to how and against whom it should be asserted. This is not analogous to the question we decide here.

In Joyner v. F & B Enterprises, Inc., 145 U.S.App.D.C. 262, 448 F.2d 1185 (1971), another case relied upon by North-West, an injured employee was paid compensation benefits by his employer's compensation insurance carrier, without formal award being entered. The employee then sued a third party allegedly responsible for his injuries, and joined the third party's employer as defendant. The defendants then sought to join the compensation insurance carrier as a named party plaintiff in the action. The controversy between the parties was whether the carrier *must* be joined as a "real party in interest" under F.R.Civ.P. 17(a). After considering 33 U.S.C.A. § 933(b) and the cases interpreting that section, including *The Etna*, the court held that the insurance carrier was not a real party in interest in the employee's suit against the third party tortfeasor. There was no waiver of subrogation issue in the case. The carrier had its right of subrogation and could assert it by intervening in the employee's suit if it chose to do so.

Another case cited to us by North-West, Nacirema Operating Co. v. Oost-

ing, 456 F.2d 956 (4th Cir.), cert. denied, 409 U.S. 980, 93 S.Ct. 313, 34 L.Ed.2d 243 (1972), concerned the proper computation of a 33 U.S.C.A. § 933(f) deficiency award, which arises when the amount of money an injured employee receives in a suit against a third party tortfeasor is less than the amount paid under the provisions of the Longshoremen's and Harbor Workers' Act. After examining § 933(e) and its judicially created counterpart, the court held that the deficiency should be computed without deduction for the longshoreman's attorney's fees and litigation expenses incurred in his action against the third party. Again in this case, as in all of the other cases relied upon by North-West, there was no waiver of subrogation rights by the insurer against a third party. Although the cases cited by North-West illustrate the variety of problems which arise under the Longshoremen's and Harbor Workers' Act, they do not materially aid in the solution of the problem at hand.

North-West argues that it waived only its right to subrogation and not its right to a lien on the plaintiff's recovery fund. It is fundamental, however, that a lien does not exist without a right or obligation to support it. A lien is simply a claim against property for the payment of a debt or the fulfillment of some obligation. At the time North-West made the payments for compensation and for medical expenses in this case, it had already agreed in its contract with American for a premium and for the express benefit of Texaco that its right of subrogation against Texaco would be waived. When North-West waived subrogation, it necessarily waived the lien which it claims to assert bottomed on the right of subrogation.

In its brief North-West has quoted language from several cases to support its contention that the courts have established the compensation lien to prevent double recovery by the plaintiff. *See* Nacirema Operating Co. v. Oosting, *supra*; The Etna, *supra*; Fontana v.

**982**

Pennsylvania R.R., *supra.* In circumstances where no waiver has been given, the possibility of double recovery by the plaintiff provides justification for creating an equitable lien in favor of a party making compensation payments to the injured workman. But if the right to subrogation has been waived, there is no debt for which an equitable lien can be created. Having waived its rights to subrogation, North-West has no standing to protest the plaintiff's possible double recovery.

It should be noted that under the terms of the settlement agreement in this case there could be no double recovery by the injured employee. Allen received $15,000 net, regardless of the disposition of the compensation claim. Texaco agreed to pay in addition the claim of North-West if found valid. The nature of the settlement robs the double recovery argument of all vitality. As a practical matter, the waiver of subrogation rights by the compensation insurer permits the third party to achieve the kind of settlement arrived at here and precludes double recovery to the third party's advantage.

The additional premium of $103 paid to North-West for Endorsement No. 13, waiving its subrogation rights against Texaco, deprives North-West of the equity it asserts in claiming an equitable lien on Allen's settlement fund from Texaco. The very purpose of the waiver of subrogation provision in the American-North-West contract was to assure Texaco that, in the event it was sued as a third party, it would not have to pay the elements of damage for which North-West had already compensated the injured employee. The money Texaco paid American for the services of its employees of necessity included consideration of the required additional insurance premiums paid to North-West. Under these circumstances, North-West is not in a position to argue equities.

Affirmed.