THE THOUGHTS OF CHAIRMAN LOEB

**Donnie LeBLANC**

v.

**PETROLEUM EQUIPMENT TOOLS COMPANY.**

**Civ. A. No. 76–0536.**

United States District Court,
W. D. Louisiana,
Lafayette-Opelousas Division.

Feb. 20, 1980.

Supplemental Opinion May 8, 1980.

Thompson & Sellers, Charles M. Thompson, Jr., Abbeville, La., for plaintiff.

McGlinchey, Stafford, Mintz & Hoffman, C. G. Norwood, Jr., and Scott Silbert, New Orleans, La., for intervenor.

## MEMORANDUM OPINION

PUTNAM, Senior District Judge.

Plaintiff, Donnie LeBlanc, brought suit against Atlantic Richfield Company (ARCO), Petroleum Equipment and Tools Company (PETCO), and B. J. Hughes (Hughes) for a hand injury he sustained while working on a fixed platform in the Gulf of Mexico off the Louisiana Coast. The injury occurred while he was operating a set of power tongs on a drilling platform on the outer continental shelf. Hughes manufactured the tongs; PETCO owned them and leased them to ARCO, the owner of the platform. Plaintiff's employer, Atlantic Pacific Marine Corporation (Atlantic Pacific), had contracted to drill one or more wells in search of oil and other minerals from the platform in question.[1]

Plaintiff received compensation benefits from Atlantic Pacific's insurer, American Home Assurance Company (American Home), in the amount of $18,615.88, under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq. American Home intervened to recover benefits paid by it pursuant to 33 U.S.C. § 933. Plaintiff has now settled with ARCO, PETCO, and Hughes for $50,000.00 with each defendant contributing one-third. Left to be decided is the amount, if any, that intervenor is entitled to receive out of the proceeds of the settlement.

The dispute between the plaintiff and intervenor stems from the agreement between Atlantic Pacific and ARCO.[2] Under the terms of the contract, Atlantic Pacific

1. The original parties to the contract were ARCO and Walker-Huthance Offshore Company. Walker-Huthance assigned this contract to Atlantic Pacific, which assumed all obligations under the contract with ARCO.

2. This contract is not in the record. It is not needed for the determination of this case, since the issue to be decided arises from the insurance contract between Atlantic Pacific and American Home, which is in evidence.

was to secure a waiver of subrogation in favor of ARCO in all policies of insurance carried by it, as to any acts or omissions in connection with the work covered by the contract. The following endorsement was obtained from American Home to effect this purpose:

"The company, in the event of payment under this policy, waives its rights of subrogation against any individual, firm or corporation for whom the Named Insured may be working, but this waiver shall apply only in respect to the specific contract existing, between the Named Insured and such other individual, firm or corporation and shall not be construed to be a waiver in respect of other operations of such individual, firm or corporation in which the insured has no contractual interest."

Plaintiff LeBlanc contends that this waiver as to ARCO also waives intervenor's right of subrogation as to PETCO and Hughes, or at least has the effect of reducing intervenor's claim by one-third.

Plaintiff relies on *Allen v. Texaco*, 510 F.2d 977 (5 Cir. 1975) and Louisiana Civil Code Article 2203,[3] applied here as surrogate federal law, *Rodrigue v. Aetna Casualty & Surety Co.*, 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969), in support of his position. The argument is that, under *Allen*, the waiver of subrogation does not contain a reservation of rights against the other defendants; therefore, Article 2203 operates to discharge the remaining debtors in solido, so that they owe nothing to American Home under 33 U.S.C.A. § 933.

■ In *Allen v. Texaco*, supra, the Fifth Circuit held that the equitable lien given to the compensation carrier on the proceeds of any settlement by an injured longshoreman with a third party tort feasor, is based on the right of subrogation granted by 33

U.S.C. § 933(h) and does not exist without it. Thus, when a compensation carrier waives its right of subrogation against a third party the carrier's lien on the plaintiff's recovery from that third party is also waived. *Allen* dictates here that American Home has waived its right of subrogation as to defendant ARCO and therefore cannot claim a lien on the proceeds of the settlement paid by that company.

■ Article 2203 of the Louisiana Civil Code of 1870 does not prohibit American Home's recovery against the proceeds paid by PETCO and Hughes, however. This code article requires that when a creditor releases one debtor *in solido*, the creditor must reserve its rights against the remaining co-debtors *in solido*, or they are also released. They are each bound for the whole of the debt and are representatives of each other in their dealings with the creditor in regard to the common debt. Only one obligation exists in favor of the creditor, and if any one of the co-debtors negotiates a settlement or payment of the debt, it inures to the benefit of the others. If the creditor wishes to release one co-debtor without discharging the others, he must make this intention known by reserving his rights against the others, making it clear that his release of one debtor is restricted to that particular person and does not extend to the others.[4]

The instant case does not fall within the scheme of Article 2203, supra. The solidary obligation here arises out of the defendants' relationship as joint tort feasors, a relationship that could not have existed prior to the tort. The waiver by American Home was executed before the injury to LeBlanc. At that time, no solidary debt and no mandatory relationship existed among the defendants and American Home had no one

---

**3.** Louisiana Civil Code Article 2203 reads:

"The remission or conventional discharge in favor of one of the codebtors in solido, discharges all the others, unless the creditor has expressly reserved his right against the latter.

In the latter case, he cannot claim the debt without making a deduction of the part of him to whom he has made the remission."

The briefs assume the defendants to be joint tort feasors and liable *in solido*. This is not admitted, and our Opinion is limited to this hypothesis.

**4.** Article 2203, supra; see also Aubry & Rau, Droit Civil Law Translations § 298(b), at pp. 30, 31 & 32.

against whom it could have reserved any rights. While ARCO may have been found to be a joint tort feasor as to plaintiff and liable *in solido* for the whole debt because of the pre-tort waiver of subrogation, it has no obligation to reimburse American Home. As between it and the remaining tort feasors (assuming they are such), however, ARCO is still liable for its one-third of the total debt. If we allow full recovery of the amount of benefits paid to plaintiff from PETCO and Hughes, we would permit American Home to do indirectly what it cannot do directly, for the obligation of ARCO to respond for its virile share of the debt is not affected by its contract with plaintiff's employer, Atlantic Pacific and its insurer.

But we cannot now decide this case. In our study of the record, the lease of the offending power tongs by PETCO requires ARCO to indemnify and hold it harmless from any liability resulting from the use of the tongs. No mention of this contract is made in the briefs or in the stipulation submitting the matter. The lease was filed on October 30, 1979, in response to plaintiff's request for production of documents. Moreover, *Mitchell v. Scheepvaart, etc.,* 579 F.2d 1274 (5 Cir. 1978), unequivocally requires that plaintiff's claim for attorney's fees be further documented on aquantum meruit basis.

For the foregoing reasons, we have requested and now order that both sides submit briefs within ten (10) days of this date on the following questions:

1. Does the indemnity agreement between ARCO and PETCO fall within the waiver of subrogation in the American Home policy issued in this case, so as to deny recovery by American of any reimbursement of payments from the settlement between PETCO and plaintiff LeBlanc?

2. Attorneys fees due plaintiff's attorney, if any, from the recovery of benefits by American Home.

In connection with paragraph 2 next above, the parties may be able to stipulate on attorneys fees or submit the question on affidavits of plaintiff's counsel.

IT IS SO ORDERED.

### SUPPLEMENTAL OPINION

Having received the additional briefing and affidavits required by our Order of February 14, 1980, we proceed to the final disposition of the claims presented by American Home's intervention for compensation benefits previously paid to plaintiff, totaling $18,615.88.

Under *Allen v. Texaco,* 510 F.2d 977 (5 Cir. 1977), having waived subrogation against Atlantic Richfield Company (ARCO), American Home Assurance Company has lost its lien on the proceeds of any settlement paid by that company, which reduces the intervention by one-third. After considering the briefs, we conclude that the indemnity agreement between ARCO and Petroleum Equipment and Tools Company (PETCO) has no effect on intervenor's claim to the one-third of the settlement paid by PETCO. The agreement does change the relationship between the co-debtors ARCO and PETCO, but it has no effect on the creditors' rights against them as solidary obligors in the absence of an express agreement or condition attached to the obligation. Cf. *Maryland Casualty Company v. Liberty Mutual Insurance Co.,* 254 La. 489, 224 So.2d 465 (1969). American Home is entitled to recover two-thirds of its intervention, $12,410.59, and no more.

A second issue left undecided by the previous opinion is that of attorney's fees. In cases such as this, where the compensation carrier simply intervenes in the plaintiff's suit against a third party tortfeasor, the plaintiff's attorney may be awarded attorney's fees out of the intervenor's recovery on a quantum meruit basis. We requested further documentation from the plaintiff's attorney upon which an award of attorney's fees could be based. An affidavit by the attorney has been filed.

The Fifth Circuit, in *Mitchell v. Scheepvaart Maatschappij Trans-Ocean,* 579 F.2d 1275 (5 Cir. 1978), established the method

by which attorney's fees, if any, are to be determined here. *Mitchell* provides that the calculation cannot be reduced to a formula, but offers a three-step method to be followed:

"It must be done by (a) fixing a total fee that would be reasonable under the circumstances of the case; (b) determining the amount of the fee that plaintiff's counsel is entitled to receive from his client, taking into account the court's responsibility to supervise the reasonableness of any contingency fee; and, (c) determining to what extent the difference between a reasonable fee for the gross recovery and the attorney's fee paid by the plaintiff may justly be taxed against the compensation carrier." 579 F.2d at 1281.

Applying this approach, the court finds as follows:

(a) A one-third contingency fee is reasonable in this case. A reasonable fee on the $50,000 settlement would, therefore, be $16,666.66.

(b) Plaintiff's net recovery after subtracting the intervention of $12,410.59, is $37,589.41. Plaintiff's attorney is entitled, by contract, to one-third, or $12,529.80.

(c) The difference between the one-third contingency fee on the gross amount and plaintiff's net recovery is $4,136.86, the equivalent of one-third of the intervenor's recovery.

The plaintiff's attorney's affidavit states that he alone prepared the case for trial, receiving no assistance from the intervenor's attorney. Plaintiff's attorney also states that he has spent "hundreds of manhours in preparation of this case for trial," and was required to depose various witnesses. These assertions by the attorney are not of the specificity needed to precisely calculate the value of his services, but the court feels, after considering the time and labor required for this type of case, the customary fee charged, the amount of the settlement, and the experience, reputation,

and ability of the attorneys,* along with the fact that the plaintiff's attorney received little assistance from the intervenor, that a fee of $4,136.86 assessed against American Home, is reasonable.

The allocation of the proceeds from the settlement, rounded off, shall be made as follows:

| Plaintiff | $25,059.61 |
| American Home | 8,273.73 |
| Plaintiff's Attorney | 16,666.66 |

The attorney representing plaintiff shall forthwith prepare and forward a formal decree for signature by the court in keeping herewith. Judgment is rendered accordingly. The Clerk shall delay entry of judgment until such time as the formal decree is signed and filed.

---

* These factors are set forth in footnote 10 of *Mitchell,* supra, as factors to be considered in determining appropriate attorney's fees.