Lucille M. BURDUE, et al., Plaintiffs,

v.

UNITED STATES STEEL CORPORA-
TION, Defendants,

and

The American Ship Building Company,
Defendant-Appellee,

and

Home Insurance Company,
Defendant-Appellant.

No. 80–3639.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 11, 1981.

Decided April 30, 1982.

Thomas J. Dorchak, Cleveland, Ohio, for defendant-appellant.

Albert J. Knopp, Paul S. Turner, Wayne Dabb, Jr., Cleveland, Ohio, for defendant-appellee.

Before ENGEL and BROWN, Circuit Judges, and CECIL, Senior Circuit Judge.

BAILEY BROWN, Circuit Judge.

Home Insurance Company ("Home Insurance"), insurer of appellee American Shipbuilding Company ("AmShip"), is appealing from the grant of summary judgment to AmShip and the denial of its motion for summary judgment with regard to AmShip's cross-claim in this consolidated wrongful death action. For the reasons stated herein, we reverse and vacate the grant of summary judgment in favor of AmShip and remand for entry of summary judgment in favor of Home Insurance.

AmShip entered into an agreement with United States Steel Corporation ("United States Steel") on January 25, 1968 to construct a Great Lakes freighter. The agree-

ment included the following "hold harmless" provision:

> The Contractor [AmShip] will hold and save the Owner [United States Steel] harmless from any and all claims to damage to persons or property asserted by employees, invitees or guests of the Contractor [AmShip].

Thereafter, on July 1, 1968, Home Insurance contracted with AmShip to insure AmShip for workmen's compensation coverage.[1] Under the terms of the policy, Home Insurance agreed to indemnify any loss over $50,000 sustained by AmShip on account of "compensation and other benefits required of the insured by the workmen's compensation law. . . ." The policy expressly extended its coverage to include liability incurred under the federal Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–950 (1976) ("Compensation Act").

On June 24, 1971, four AmShip employees, Clyde Ray Burdue, Leonard C. Moore, Jr., John D. Alexander, and George E. Adams, were killed in a fire and explosion on the Great Lakes freighter under contract. Pursuant to its obligations under the Compensation Act, AmShip began making compensation payments to the plaintiffs in this action, Lucille Burdue, Mary Ann Moore, and Angela Alexander.[2]

In 1973 these three widows, although continuing to receive compensation payments from AmShip, each filed, as administratrix of their deceased husband's estate, wrongful death actions against, *inter alia*, United States Steel, AmShip, and Home Insurance.[3] These actions were permissible under the Compensation Act, which provides that, in addition to receiving compensation payments from the employer, an employee or representative may also recover compensatory damages. 33 U.S.C. § 933 (1976). In order to avoid double recovery by the employee, however, § 933 provides, in general, that employers who have paid compensation under the Compensation Act may assert a lien in the amount of such payments against the amount recovered as compensatory damages and, with respect to the employer's obligation to pay compensation, it may claim a setoff to the extent that the employee has recovered compensatory damages. In addition, § 933 of the Compensation Act provides, in general, that where the employer has paid compensation and the employee has not pursued his claim for compensatory damages the employer, by subrogation, may pursue the employee's claim for compensatory damages.

The three suits were consolidated and, at a pretrial conference on December 22, 1975, a settlement was reached. The settlement agreement provided that United States Steel and AmShip would make total lump sum payments as compensatory damages to Burdue, Moore, and Alexander in the respective amounts of $175,000, $450,000, and $430,000. In addition, $60,000 was to be

---

1. Although Home Insurance insured AmShip under an excess longshoremen and harbor workers compensation policy, AmShip was otherwise insured by the Continental National American Insurance Company ("CNA"). Because the AmShip-CNA policy included contractual liability coverage, and because of the AmShip-United States Steel hold harmless agreement, CNA provided coverage to United States Steel as to all claims for compensatory damages within the limits of the AmShip-CNA policy. Hartford Insurance Company ("Hartford") was not only one of the insurers for United States Steel, but also insured Home Insurance against liability for negligence. See note 5 *infra* and accompanying text.

2. The present controversy involves these payments to the extent that the total exceeds $50,-

000.00. No compensation payments are being paid to the personal representative of George Adams.

3. Plaintiffs alleged that Home Insurance negligently failed to inspect the safety conditions of the freighter as required, it was alleged, by its insurance policy with AmShip. With regard to United States Steel and AmShip, the plaintiffs alleged numerous counts of negligence and gross negligence and asserted that the defendants had not provided a reasonably seaworthy vessel fit for the purpose for which it was intended. The complaints also included counts against United States Steel for strict and absolute liability and for breach of nondelegable duties.

paid to the estate of George Adams.[4] Under the terms of the settlement, AmShip agreed that the compensation payments were to continue to be paid and were not to be considered as liens against the settlement fund and no claim of setoff would be made. Home Insurance was allegedly represented at the conference by Mr. Harley McNeal, who was assigned by the Hartford Insurance Company to defend Home Insurance against a negligence claim based on failure to inspect.[5] Mr. McNeal agreed that, in the event compensation payments by AmShip exceeded $50,000, Home Insurance would waive any lien or right of setoff it might otherwise be entitled to assert under the Compensation Act.[6]

Home Insurance, however, subsequently refused to reimburse AmShip for its payments exceeding $50,000 on the ground that Mr. McNeal possessed no authority to waive any liens or rights of setoff which Home Insurance may have had against the recovery of the plaintiffs in their suits against AmShip and United States Steel. The district court agreed with Home Insurance as to Mr. McNeal's lack of authority and, on August 7, 1978, denied AmShip's request for an order enjoining Home Insurance from not complying with the settlement agreement. There was no appeal from this ruling.

The district court, however, did grant AmShip leave to file a declaratory cross-claim against Home Insurance in light of the possibility that AmShip's hold harmless agreement with United States Steel, executed prior to the issuance of the Home Insurance policy to AmShip, operated to extinguish any right of subrogation, lien and setoff that AmShip (and arguably, by extension, Home Insurance) obtained by virtue of AmShip's payments made and to be made under the Compensation Act. AmShip filed its cross-claim on November 6, 1978, and both parties subsequently moved for summary judgment.

On August 15, 1980, the district court granted AmShip's motion for summary judgment and denied the motion of Home Insurance. Home Insurance had argued before the district court that AmShip's agreement with the plaintiffs to waive its lien and setoff rights under the Compensation Act as a condition of the settlement rendered all compensation paid by AmShip as voluntary in nature and therefore not insured under the excess compensation policy. AmShip, on the other hand, contended that it had no lien or setoff rights against United States Steel because of the January 25, 1968 hold harmless agreement, which was executed prior to the insurance agreement between AmShip and Home Insurance. Because this hold harmless agreement extinguished any rights that AmShip may have possessed against United States Steel, AmShip argued, any corollary lien or setoff rights of AmShip as to the plaintiffs' recovery from United States Steel were also eliminated. Therefore, AmShip argued, since it could not have recouped its compensation payments to the plaintiffs from any recovery fund because of the hold harmless agreement, the waiver of its lien rights or setoff rights as a condition of the settlement did not render payments voluntary and, consequently, payments were insured under the excess compensation policy.

4. Of the total settlement fund of $1,115,000, AmShip was to pay $250,875, with the liability insurance carriers paying the balance.

5. See note 3 *supra.* Hartford assumed the defense of the negligence count against Home Insurance by virtue of a liability policy issued by it to Home Insurance. Hartford also covered United States Steel as to any liability exposure it had.

6. Apparently there was some confusion at the settlement conference as to whether the compensation payments had reached $50,000 at that point. The attorney for the plaintiffs was of the opinion that the payments had not yet reached $50,000, whereas an attorney for AmShip indicated his belief that the payments were already in excess of $50,000. This matter was subsequently cleared up during proceedings before the district court on February 7, 1978 when AmShip's attorney at the proceeding indicated that the payments by AmShip had *not* reached $50,000 at the time of the December 22, 1975 settlement conference. Under our view of the case, however, the outcome should be the same whether the AmShip payments had or had not exceeded $50,000 at the time of the settlement.

The district court agreed with AmShip. In analyzing the problem, the court considered the relative rights of AmShip and Home Insurance had there been no settlement but instead a recovery on the part of the plaintiffs against United States Steel after a trial. In such a situation, the court opined, AmShip, having made compensation payments and therefore entitled to a lien on the recovery under 33 U.S.C. § 933, could not have exercised its statutory lien because, under the hold harmless agreement, it was contractually bound "to hold and save USS harmless from claims brought against USS by AmShip's employees. Therefore, it could not have exercised its statutory lien against the judgment fund recovered by plaintiffs against USS. On the contrary, it would have been contractually bound to indemnify USS from the payment of any such judgment fund." App. 219–220.

The district court further observed that the rights of Home Insurance were rights of subrogation and could rise no higher than the rights of AmShip. Consequently, the court concluded, Home Insurance, like AmShip, had no rights against United States Steel because AmShip had already surrendered by its hold harmless agreement any right against United States Steel. In conclusion, the district court held that AmShip's waiver of its lien and setoff rights on December 22, 1975 against the settlement fund "in reality gave up no existing right of action that AmShip had against [United States Steel]" and hence did *not* render future compensation payments by AmShip voluntary. As a result, the court held that the payments were required by law and that Home Insurance was obligated to reimburse AmShip for all compensation payments in excess of $50,000.

A waiver of subrogation rights against a third-party tortfeasor has been held to ex-

tinguish any lien upon and right to recover from an employee's recovery against the tortfeasor. *Capps v. Humble Oil and Refining Co.*, 536 F.2d 80, 81 (5th Cir. 1976); *Allen v. Texaco, Inc.*, 510 F.2d 977, 978–81 (5th Cir. 1975). Both *Capps* and *Allen*, however, involved express agreements by the compensation insurance carriers to waive their right of subrogation. Home Insurance, by contrast, has never expressed any intention of waiving its subrogation rights. Nevertheless, the district court held that AmShip, by virtue of its hold harmless agreement with United States Steel, waived its right of subrogation before contracting with Home Insurance, and that therefore Home Insurance had never had rights of subrogation against United States Steel.

The critical underlying proposition upon which the decision of the district court rests is that the execution of the hold harmless agreement by AmShip was the legal equivalent of a waiver by AmShip of its subrogation rights. The district court reached an express conclusion to this effect:

> In this case, the hold harmless agreement, although not using the terminology "waiver of subrogation," had the same effect as a waiver of subrogation rights insofar as a recovery from [United States Steel] was concerned.

App. 221. Because we determine that the hold harmless agreement between AmShip and United States Steel did *not* have the same effect as a waiver by AmShip of its subrogation rights, we reject the proposition underlying the district court's decision.[7]

It is true that if the plaintiffs here had sought no recovery on their tort claims and if AmShip, after paying them compensation, had sought, by subrogation, to maintain an action against United States Steel, the hold harmless provision would have been a defense for United States Steel. In

---

7. Because we find that the hold harmless agreement was not the equivalent of a waiver of subrogation rights, we do not need to address Home Insurance's argument that, if the hold harmless agreement is given the effect of a waiver of subrogation rights, then AmShip breached the terms of the excess compensation

policy *ab initio*, rendering all compensation payments uninsured. This argument was not raised in district court and, in any event, the record is silent as to whether Home Insurance had knowledge of the hold harmless agreement when it issued its policy.

this sense it could be said that the execution of the hold harmless agreement was a waiver of subrogation rights so far as AmShip is concerned. But here there was a joint recovery against United States Steel and AmShip and, as will be seen, absent a waiver of its lien and setoff rights, AmShip would have had such rights with respect to such recovery.

If the claims had not been settled and plaintiffs had recovered judgments against United States Steel (or United States Steel and AmShip), after a trial, AmShip (and its liability insurance carrier), pursuant to the hold harmless agreement, would have had to pay the judgments. Nevertheless, AmShip and Home Insurance would have had lien rights as to the recovery to the extent of their compensation payments and would have had setoff rights as compensation payments became due. Assertion of such lien or setoff rights and satisfaction of such lien or setoff rights by collection out of the tort recovery or by setoff would not affect the fact that United States Steel's obligation would have been completely discharged; assertion of such lien or setoff rights merely reduces the net total recovery of plaintiffs (for compensatory damages and as compensation). Thus AmShip and Home Insurance could have asserted their lien or setoff rights without violating the hold harmless agreement and without affecting United States Steel's discharge from further liability at the time the tort judgments were paid.

Under the settlement, it was agreed in behalf of United States Steel and AmShip (and the liability insurance carriers) that the tort claims would be settled for $1,115,-000 of which AmShip itself was to contribute $250,875 and the liability carriers were to pay the balance. If there had been no waiver of lien or setoff rights with respect to compensation paid or to be paid, the payment of the agreed amounts to satisfy the tort claims would have satisfied the claims (including the tort claim against United States Steel), but AmShip would have had lien and setoff rights against the settlement fund insofar as it had paid or still had compensation obligations to plain-

tiffs. The lawyer representing AmShip, however, waived its lien and setoff rights. Consequently, all the payments made and to be made by AmShip were voluntary and not required by law because AmShip, but for the waiver of lien and setoff rights, would have had a lien on the recovery to the extent of compensation paid and a right not to make further compensation payments unless and until its setoff rights had been exhausted.

Accordingly, the summary judgment in favor of AmShip will be vacated and the case is remanded to the district court to enter summary judgment for Home Insurance.