# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

15-291

ANTHONY J. BESLIN

VERSUS

ANADARKO PETROLEUM CORPORATION, ET AL.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF ACADIA, NO. 84,457
HONORABLE GLENNON P. EVERETT, DISTRICT JUDGE

**********

## ELIZABETH A. PICKETT
## JUDGE

**********

Court composed of Elizabeth A. Pickett, Phyllis M. Keaty, and David K. Savoie, Judges.

AFFIRMED.

Bennett Boyd Anderson, Jr.
Anderson, Dozier, Blanda & Saltzman
Post Office Box 82008
Lafayette, Louisiana 70598-2008
(337) 233-3366
COUNSEL FOR PLAINTIFF-APPELLEE:
    Anthony J. Beslin

**Christoper S. Mann**
**Lance M. Sannino**
**Ian A. Macdonald**
**Jones Walker, LLP**
**201 St. Charles Avenue, 47th Floor**
**New Orleans, Louisiana 70170-5100**
**(504) 582-8000**
**COUNSEL FOR DEFENDANTS-APPELLEES:**
    **Grey Wolf Drilling Company, L.P./Grey Wolf Holdings Company**

**Dan Boudreaux**
**Law Offices of Keith R. Giardina**
**9100 Bluebonnet Centre Boulevard, Suite 300**
**Baton Rouge, Louisiana 70809**
**(225) 293-7272**
**COUNSEL FOR INTERVENOR-APPELLANT:**
    **Liberty Mutual Insurance Company**

**PICKETT, Judge.**

Insurer appeals the grant of summary judgment dismissing its subrogation claim against a third party defendant to recover workers' compensation benefits the insurer paid the employee. The insurer also appeals the dismissal of its motion to recover the workers' compensation benefits from the employee. For the following reasons, we affirm the trial court's judgment.

## FACTS

In November 2005, Anthony Beslin was injured during the course and scope of his employment with Offshore Energy Services, Inc. (OES). Pursuant to an insurance contract with OES, Liberty Mutual Insurance Company (Liberty Mutual) paid Beslin workers' compensation benefits. Beslin filed suit against Anadarko Petroleum Corporation (Anadarko), Grey Wolf Drilling Company, L.P./Grey Wolf Holding Company (Grey Wolf), and Van Spinks, a Grey Wolf employee whose negligence allegedly caused Beslin's injuries, to recover damages for his injuries. Liberty Mutual intervened in Beslin's suit, asserting a subrogation claim against Grey Wolf to recover the workers' compensation benefits it paid Beslin.

At the time of Beslin's accident, OES was performing oilfield services on a land rig pursuant to a Master Service Contract with Anadarko. The Master Service Contract between OES and Anadarko required OES to provide various types of insurance coverage, including workers' compensation insurance. The Master Service Contract also required the insurance policies to include endorsements by which OES's insurers waived their rights of subrogation against Anadarko and its indemnitees.

The rig on which the drilling operations were being performed was owned and operated by Grey Wolf pursuant to a Master Daywork Drilling Contract

between Anadarko and Grey Wolf. In the drilling contract, Anardarko contracted the drilling services required by the Master Service Contract to Grey Wolf.

Beslin settled his claims against Grey Wolf and Spinks. The settlement, paid by Anadarko on behalf of Grey Wolf and Spinks, provided, in pertinent part, that "the claim asserted by Liberty Mutual for workers' compensation benefits paid to or on behalf of Beslin . . . shall remain the responsibility of the Released Parties." Liberty Mutual sought to recover the amounts paid in workers' compensation benefits to Beslin from Grey Wolf and, alternatively, from Beslin. Grey Wolf filed a motion for summary judgment, asserting that Liberty Mutual waived its right of subrogation against it in the policy issued to OES. Beslin and Grey Wolf opposed Liberty Mutual's attempt to obtain payment from Beslin, outlining a number of procedural and substantive reasons why the motion lacked merit.

The trial court granted Grey Wolf's motion for summary judgment and denied the relief Liberty Mutual sought against Beslin. Liberty Mutual appealed.

In a prior appeal, Liberty Mutual also appealed the grant of summary judgment in favor of Grey Wolf. The basis of Grey Wolf's motion for summary judgment was that Liberty Mutual waived its right to reimbursement. Waiver is an affirmative defense that must be pled in an answer, but Grey Wolf had not pled waiver as an affirmative defense. Therefore, the grant of summary judgment was reversed, and the matter was remanded for further proceedings. *Beslin v. Anadarko Petroleum Corp.*, 11-1523 (La.App. 3 Cir. 4/4/12), 87 So.3d 334.

*Waiver of Subrogation*

In *Robinson v. Heard*, 01-1697, pp. 3-4 (La. 2/26/02), 809 So.2d 943, 945, the supreme court set forth the applicable standard of appellate review in summary judgments involving insurance contracts:

> A reviewing court examines summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. *Smith v. Our Lady of the Lake Hospital, Inc.*, 93-2512 (La. 7/5/94), 639 So.2d 730, 750. A reviewing court thus asks the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. *Smith*, 639 So.2d at 750.

> Interpretation of an insurance contract is usually a legal question that can be properly resolved in the framework of a motion for summary judgment. *Sanchez v. Callegan*, 99-0137 (La.App. 1 Cir. 2/18/00), 753 So.2d 403, 405. When the language of an insurance policy is clear and unambiguous, a reasonable interpretation consistent with the obvious meaning and intent of the policy must be given. *Sanchez*, 753 So.2d at 405.

In its motion for summary judgment, Grey Wolf asserts that Liberty Mutual's waiver of subrogation in OES's policy prohibits Liberty Mutual's subrogation claims because: (1) the Master Service contract between Anadarko and OES required a waiver of subrogation by OES's workers' compensation insurer, and (2) in its drilling contract with Grey Wolf, Anadarko assumed all liability for Grey Wolf and agreed to defend, release, indemnify, and hold Grey Wolf harmless. Grey Wolf also points out that the Master Service Contract's definition of "Company Indemnitees" includes Anadarko's subcontractors and their employees, i.e., Grey Wolf.

The relevant language of the Master Service Contract reads as follows:

12. Insurance – As to all operations provided for herein; each party shall carry and maintain for the benefit of the other Party, the following minimum insurance coverage with policy territory sufficient to cover the Work hereunder.

3

. . . .

> (h) For liabilities assumed by the Party herein, all of the above insurance shall be endorsed to provide that:
>
> (1) The Partys' Insurers waive their right of subrogation (equitable or by assignment, express or implied, loan receipt or otherwise) against Company's Indemnitees or Contractor Indemnitees, whichever is applicable.

The Master Service Contract defines "Party" to include both Anadarko and OES and defines "Company's Indemnitees" to include Anadarko's "subcontractors and their employees."

Grey Wolf was a subcontractor of Anadarko when Beslin was injured. Under the terms of the drilling contract, Anadarko assumed all liability for Grey Wolf and agreed to defend and indemnify and hold Grey Wolf harmless with regard to any claims for bodily injury made against Grey Wolf as a result of work Grey Wolf performed under the drilling contract. Section 9.3(a) of the drilling contract provides, in relevant part, as follows:

> COMPANY [ANADARKO] AGREES TO BE RESPONSIBLE FOR AND ASSUME ALL LIABILITY FOR AND HEREBY AGREES TO DEFEND, RELEASE, INDEMNIFY AND HOLD HARMLESS THE CONTRACTOR INDEMNITEES FROM AND AGAINST CLAIMS ARISING IN CONNECTION WITH: (I) BODILY INJURY TO AND/OR DEATH OF COMPANY'S EMPLOYEES, COMPANY'S SUBCONTRACTORS OR INVITEES AND/OR ITS OR THEIR EMPLOYEES . . .

The drilling contract defines "Contractor Indemnitees" to include Grey Wolf.

Grey Wolf asserts that pursuant to Section 9.3(a) Anadarko assumed the defense of Grey Wolf in the underlying suit and was obligated to indemnify it for the entirety of Beslin's claim. Grey Wolf further asserts that the contractual relationships between Anadarko and Grey Wolf and Anadarko and OES required Liberty Mutual, as OES's insurer, to waive any rights of subrogation it had against

4

Anadarko and Grey Wolf, as a Contractor Indemnitee, arising out of claims like Beslin's that arose under these contracts.

Liberty Mutual argues that the waiver of subrogation does not apply to Grey Wolf because the terms of the Master Service Agreement and the Master Daywork Drilling Contract do not satisfy the requirements of the subrogation waiver endorsement contained in its insurance policy. The endorsement, entitled "WAIVER OF OUR RIGHT TO RECOVER FROM OTHERS ENDORSEMENT," provides:

> We have the right to recover our payment from anyone liable for an injury covered by this policy. We will not enforce our right against the person or organization named in the Schedule. (This agreement applies only to the extent that you perform work under a written contract that requires you to obtain this agreement from us.)
>
> This agreement should not operate directly or indirectly to benefit anyone not named in the Schedule.
>
> Schedule
>
> All persons or organizations that are parties to a contract that requires you to obtain this agreement, provided you executed the contract before the loss.

Grey Wolf relies on *Allen v. Texaco, Inc.*, 510 F.2d 977 (5th Cir. 1975) and *Olivier v. Best Workover, Inc.*, 94-994 (La.App. 5 Cir. 1/30/96), 669 So.2d 476, as support for its position. In *Allen*, 510 F.2d at 982, the Fifth Circuit held that the purpose of the insurer's waiver of subrogation in favor of Texaco:

> [W]as to assure Texaco that, in the event it was sued as third party, it would not have to pay the elements of damage for which [the insurer] had already compensated the injured employee. The money Texaco paid [the insured] for the services of its employees of necessity included consideration of the required additional insurance premiums paid to [the insurer].

5

Unlike Liberty Mutual's policy, the waiver of subrogation in *Allen* specifically named Texaco and waived the insurer's right of subrogation against Texaco. That was not the case in *Olivier* however.

Liberty Mutual was also the insurer in *Olivier*. The subrogation waiver was identical to the waiver here, at least to the extent that it provided the insurer would not enforce its right of subrogation against parties named in the Schedule.[1] The Schedule included all parties to a contract that required the insured to obtain the waiver.

The plaintiff in *Olivier* was employed by Best Workover, Inc. Texaco had entered into a Master Services Agreement with Best for it to perform workover and plug and abandon work for Texaco. Best subcontracted Sigma Welders and Fabricators, Inc. to perform welding for the workover. As a result of defective welds made by a Sigma employee, a handrail failed when the plaintiff leaned on it, resulting in injuries to the plaintiff.

With only the following discussion, the court in *Olivier*, 669 So.2d at 488, held:

> The Master Services Agreement that Best and Texaco operated under contained a provision that required this waiver. In addition, the Master Services Agreement applies to all subcontractors that are employed by Best. According to the policy and the *Allen* case, the intervenor is not entitled to recover the amount of the benefits because the waiver applies to Best (a party to the contract with Texaco), Sigma (the subcontractor) and Texaco (the party requiring the waiver). *See: Id.* Since the waiver applies to plaintiff's proceeds from all three defendants, the trial judge did not err in dismissing the intervention.

---

[1]There is no indication in *Olivier* whether the subrogation waiver included the proviso that "This agreement should not operate directly or indirectly to benefit anyone not named in the Schedule" that the policy Liberty Mutual issued to OES includes. For reasons that follow, this does not affect our decision herein.

Liberty Mutual argues the holding in *Olivier* was improper because the court did not base its holding on the plain, clear language of the subrogation waiver which provided that it applied only to parties named in the Schedule and the subcontractor was not shown to be a party to a contract that required Best to obtain the waiver of subrogation. It contends that *Fontenot v. Chevron, U.S.A., Inc.*, 95-1425 (La. 7/2/96), 676 So.2d 557, mandates reversal of the grant of summary judgment herein. In *Fontenot*, Hercules contracted with Chevron to perform workover operations. Hercules agreed to and did provide workers' compensation benefits for its employees and obtained a waiver of subrogation against Chevron from it workers' compensation insurer. The waiver of subrogation applied to "All persons or organizations that are parties to a contract that requires you to obtain this agreement, provided you executed the contract before the loss." *Id*. at 559.

Chevron hired Dantzler Boat and Barge Company to evacuate personnel from an offshore rig because a hurricane was approaching the rig. The plaintiff was injured when he transferred himself from the rig to the boat via a swing rope and sued Chevron and Dantzler to recover damages. Chevron and Dantzler settled with the plaintiff. Hercules's workers' compensation insurer argued that its waiver of subrogation did not apply to Chevron and Dantzler and sought summary judgment against them for the workers' compensation benefits it paid the plaintiff. The supreme court denied summary judgment against Chevron[2] and determined that summary judgment against Dantzler was premature. With regard to Dantzler, the court explained:

---

[2] The supreme court determined the Louisiana Anti-Indemnity Act, La.R.S. 9:2780, did not apply to the waiver of subrogation provision of the contract between Chevron and Hercules; therefore, the waiver was effective between the insurer and Chevron.

> Summary judgment is improper on this issue because it is not evident from this record that a contract exists between Hercules and Dantzler under which Dantzler would require Hercules to include Dantzler in Hercules' worker's compensation policy and under which Dantzler would become a party listed in the "Schedule" in the worker's compensation insurance policy against whom Aetna's subrogation rights had been waived. This is an unresolved issue of material fact, and the matter is accordingly remanded to the trial court for further proceedings consistent with this opinion.

*Id*. at 567.

Unlike *Fontenot*, all the contracts at issue are in evidence. As stated in *Allen*, the purpose of Liberty Mutual's waiver of subrogation was to assure Anadarko that it was protected against having to pay the plaintiff, either directly or by indemnifying one of its subcontractors, damages that Liberty Mutual had already paid him in the form of workers' compensation benefits. Furthermore, the indemnity provision of the drilling contract between Anadarko and Grey Wolf is a contract under which Grey Wolf became a party as defined in Liberty Mutual's Waiver of Subrogation Schedule because Anadarko assumed liability for claims against Grey Wolf. To hold otherwise would result in Liberty Mutual's waiver of subrogation not providing Anadarko the protection it sought in the Master Service Contract and OES not getting the waiver it paid for because Anadarko would have to indemnify Grey Wolf for the settlement proceeds it paid Beslin.

Liberty Mutual next contends that even if it did waive its right of subrogation, Grey Wolf is obligated to reimburse it the amounts it paid Beslin in workers' compensation benefits because Grey Wolf failed to notify it of the settlement and obtain its consent to the settlement as required by La.R.S. 23:1102. Subsection (C)(1) of La.R.S. 23:1102 provides:

> When a suit has been filed against a third party defendant in which the employer or his insurer has intervened, if the third party defendant or his insurer fails to obtain written approval of the

compromise from the employer or his insurer at the time of or prior to such compromise and the employee fails to pay to the employer or his insurer the total amount of compensation benefits and medical benefits out of the funds received as a result of the compromise, the third party defendant or his insurer shall be required to reimburse the employer or his insurer to the extent of the total amount of compensation benefits and medical benefits previously paid to or on behalf of the employee to the extent said amounts have not been previously paid to the employer or his insurer by the employee pursuant to the provisions of Subsection B of this Section. Notwithstanding such payment, all rights of the employer or his insurer to assert the defense provided herein against the employee's claim for future compensation or medical benefits shall be reserved.

Liberty Mutual cites *Petroleum Helicopters, Inc. v. Collier*, 784 F.2d 644 (5th Cir. 1986) as support for its argument. In *Collier*, the issue was whether the employee's failure to obtain the workers' compensation insurer's consent to his settlement of claims against a third party barred the employee from pursuing his right "to future benefits under [the Longshore Harbor Workers' Compensation Act, 33 U.S.C. §§ 901-950] when the employer/carrier has contractually waived their subrogation rights against the third party tortfeasor?" *Id*. at 645. The court held that despite a waiver of subrogation, the insurer still possessed an interest in the third-party litigation, including a statutory right of set-off regarding future benefits.

*Collier* pertains only to an employee's right to future benefits. Contrary to Liberty Mutual's argument, *Collier* does not hold that a workers' compensation insurer's waiver of subrogation is not a waiver of the insurer's statutory lien for previously paid workers' compensation benefits against a third party who fails to give notice of settlement with the employee who received the benefits.

For these reasons, we affirm the trial court's grant of summary judgment in favor of Grey Wolf.

### Right of Reimbursement against Employee

Alternatively, Liberty Mutual seeks to recover from Beslin the workers' compensation benefits it paid him, arguing it did not waive its right to seek reimbursement from him. In *Allen,* 510 F.2d 977, the court rejected the insurer's claim that although it had waived its right to subrogation, it did not waive its right to seek reimbursement of the workers' compensation benefits from the plaintiff. The court explained that "a lien does not exist without a right or obligation to support it." *Id.* at 981. *Harris v. Tenneco Oil Co.*, (La.App. 4 Cir.), 563 So.2d 317, *writ denied*, 568 So.2d 1062 (La.1990), adopted this conclusion.

Relying on La.R.S. 23:1102(B), Liberty Mutual also contends that Beslin is obligated to repay the workers' compensation benefits it paid him because he failed to notify if of the settlement and obtain its consent to the settlement. Section (B) provides in pertinent part:

> If the employee or his dependent fails to notify the employer or insurer of the suit against the third person or fails to obtain written approval of the compromise from the employer and insurer at the time of or prior to such compromise, the employee or his dependent shall forfeit the right to future compensation, including medical expenses.

This provision forfeits the employee's right to future indemnity and medical benefits; it does not provide the insurer a right of reimbursement against the employee for benefits previously received. Accordingly, Liberty Mutual does not have a right to recover from Beslin the workers' compensation benefits it paid him, and the trial court did not err in denying its motion.

### DISPOSITION

The judgments of the trial court are affirmed. All costs are assessed to Liberty Mutual Insurance Company.

**AFFIRMED.**